United States District Court
Southern District of Texas
**ENTERED**
September 26, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| KYLE SPRINGER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:14-CV-300 |
| § | |
| UNKNOWN REKOFF, *et al.*, § | |
| § | |
| Defendants. § | |
| § | |

## ORDER

The plaintiff, Kyle Springer (TDCJ #01955605), is an inmate in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). He has filed this action under 42 U.S.C. § 1983, alleging that he was subjected to excessive force while held in the Galveston County Jail. Springer alleges that two jail guards, Defendants Cory Rekoff and Dante Austin, threw him to the ground and repeatedly kicked and punched him after Springer had a minor verbal disagreement with Austin; Springer was shackled and handcuffed at the time (Dkt. 17 at pp. 3–4). Springer also argues that Defendant Galveston County ("the County") is liable because Rekoff and Austin were acting pursuant to an official policy or custom of the County (Dkt. 17 at pp. 6–7, 13; Dkt. 62 at pp. 16–17).

Before the Court are several motions filed by the parties. Two of those motions, an agreed motion to allow electronic service (Dkt. 57) and Springer's unopposed motion for an extension of the deadline to respond to the County's motion for summary judgment

1

(Dkt. 60), are **GRANTED**. The other motions—motions for summary judgment filed by the defendants (Dkt. 28 and Dkt. 58) and a motion for leave to seek and compel discovery filed by Springer (Dkt. 59)—are **DENIED**. However, the denied motions will be considered reurged, where appropriate, once this Court resolves the threshold question of whether Springer exhausted his administrative remedies. The Court has determined that further evidence and briefing are necessary; its specific concerns are outlined below. After considering the parties' submissions, the Court will decide whether to hold an evidentiary hearing.

### I. The defendants have not conclusively established their failure-to-exhaust defense, and this Court will sit as factfinder regarding that defense.

In their motions for summary judgment, the defendants have raised the affirmative defense of failure to exhaust administrative remedies. The parties' summary judgment evidence and arguments are discussed in more detail below, but suffice it to say that summary judgment on failure-to-exhaust grounds is not warranted because the defendants have not "establish[ed] beyond peradventure all of the essential elements of the defense[.]" *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The *Dillon* panel made clear that, "[i]f the plaintiff survives summary judgment on exhaustion, the [district] judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary." *Id*. at 273. The district court should resolve the exhaustion question before allowing the case to proceed on the merits; *Dillon* analogized exhaustion of remedies to

threshold issues, such as personal jurisdiction and venue, involving the question of whether the plaintiff has invoked a proper forum for resolving the dispute. *Id*. at 272–73.

### a. There is a genuine issue of material fact on the question of whether the appeal of grievances was an available remedy.

The defendants first argue that Springer failed to exhaust all available administrative remedies because he "failed to appeal his grievance regarding the incident made the basis of this suit" (Dkt. 58 at p. 11). Springer argues that, under Fifth Circuit precedent, there is a genuine issue of material fact as to whether the appellate remedy was an available one (Dkt. 62 at pp. 13–14).

The Prison Litigation Reform Act ("PLRA") requires that an inmate exhaust all available administrative remedies before he may maintain a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, including lawsuits alleging excessive force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015). Because exhaustion of remedies is an affirmative defense, it is the defendant's burden to establish that there were available procedures that the inmate did not exhaust, and what those procedures were. *Id*. Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. *Dillon*, 596 F.3d at 266. "Similarly, while it is a question of law whether administrative remedies qualify as being 'available' under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact." *Id*. For

instance, prison officials' statements concerning administrative remedies can render those remedies unavailable. *Id*. at 268; *see also, e.g., Davis v. Fernandez*, 798 F.3d 290, 295–96 (5th Cir. 2015) (denying summary judgment on exhaustion defense when plaintiff "testifie[d] that jail staff told him that the grievance process include[d] only a single step—that he had no option to appeal—and he, relying on that misrepresentation, did not file an appeal").

Here, the defendants' own evidence creates a genuine issue of material fact as to whether Springer was ever informed that the Galveston County Jail grievance process had more than one step. The defendants argue that "[t]he Galveston County Sheriff's Office's jail policy manual clearly provides a right to an appeal grievance [sic] decisions" (Dkt. 58 at p. 11). This is true, judging from the copy of the manual that is included in the summary judgment record (Dkt. 58-5 at p. 133). However, there is also an "Inmate Handbook" included in the record, and that handbook's description of the inmate grievance procedure makes no mention whatsoever of an appeals process:

> INMATE GRIEVANCE PROCEDURE
>
> You are allowed to file a grievance at any time you are subjected to a prohibited act by a staff member, constitutional rights violation, criminal act or denied privileges (without just cause) specified in this handbook.
>
> To file a grievance, you must send a written statement directly to the grievance review board. The statement must contain the time, date, names of deputies and/or staff members involved and all pertinent details of the incident and names of any witnesses. All grievances will be investigated, appropriate corrective action taken, and a report issued to the inmate. Do not file a grievance on behalf of another inmate.
> Dkt. 58-4 at p. 53.

To further confuse the issue, the Inmate Handbook thoroughly outlines the steps by which inmates can appeal two *other* types of administrative rulings: (1) a finding by a disciplinary committee that the inmate is guilty of violating jail rules (Dkt. 58-4 at pp. 51–53);[1] and (2) the rejection of a grievance alleging discrimination in violation of the Americans with Disabilities Act ("ADA") (Dkt. 58-4 at p. 53).[2] The sections of the handbook that spell out how to appeal disciplinary proceedings and ADA grievances bookend the section discussing civil rights grievances, which does not so much as say the word "appeal." If one only had the Inmate Handbook to go by, it would be easy to conclude that there is no appeals process for civil rights grievances, and no steps involved in the civil rights grievance process apart from the filing of a grievance.

There is some evidence that Springer was familiar with the Inmate Handbook and the procedures discussed within. When he was booked into the Galveston County Jail, Springer signed a document indicating that he had "received an inmate handbook" (Dkt. 58-2 at pp. 58–59). Springer also unsuccessfully appealed the result of a disciplinary proceeding (Dkt. 58-3 at p. 1). But there is no evidence, and no reason to think, that

---

[1] "You have the right to appeal the decision of the disciplinary committee. . . . If the inmate does not agree with the decision of the disciplinary officer or board, he may appeal the decision to the sheriff or designee, whose decision is final" (Dkt. 58-4 at p. 51).

[2] "In the event that an inmate wishes to appeal the decision of the ADA coordinators [sic] response, the inmate shall request in writing a review of such decision by the director of corrections. All decisions of the director on appeal grievances are final. This appeal must be done within five (5) days of the grievance decision. If the ADA grievance is not resolved during the appeal process, the inmate has the right to file a complaint with:
    U.S. DEPARTMENT OF JUSTICE
    CIVIL RIGHTS DIVISION
    DEPARTMENT OF JUSTICE
    950 PENNSYLVANIA AVE, NW
    WASHINGTON, DC 20530" (Dkt. 58-4 at p. 53) (paragraph break omitted).

Springer ever received or knew anything about the jail policy manual. The policy manual actually seems to be written for and distributed to the guards, not the inmates; it covers many topics uniquely of interest to the guards, such as what types of extra jobs the guards can work (Dkt. 58-5 at p. 215), when they can take emergency leave (Dkt. 58-5 at p. 217), and how much training is required before they can work extra jobs (Dkt. 58-5 at p. 249). It also contains quotes like, "Officers will receive no compensation for the hours spent training in this program. This is a privilege afforded you by the Sheriff as a Commissioned Peace Officer" (Dkt. 58-5 at p. 250). Perhaps most tellingly, the jail policy manual itself lists the items that are given to incoming inmates; the list includes a copy of the Inmate Handbook but not a copy of the policy manual (Dkt. 58-4 at p. 113). Just after that list, the manual orders that "[t]he Classification Deputy shall answer, to the best of his ability, any questions which an inmate may pose relative to the rules and regulations set forth in the INMATE HANDBOOK" (Dkt. 58-4 at p. 113–14) (emphasis in original). There is no mention of answering questions about rules and regulations set forth in the jail policy manual, further indicating that inmates do not receive it. And of course, since the Inmate Handbook does not mention appeals from the denial of civil rights grievances, it stands to reason that many inmates would not know to ask about them.

  It seems clear that Springer never received a copy of the jail policy manual, so the defendants cannot conclusively establish their exhaustion defense simply by pointing to the language of the manual. Moreover, the complete failure of the Inmate Handbook to

mention any appeals process for civil rights grievances—particularly while painstakingly outlining the appeals process for ADA grievances on the same page and for disciplinary proceedings a few pages earlier—strongly implies that there *is* no such appeals process, an implication that would make the appellate remedy unavailable. *See Davis*, 798 F.3d at 295–96.

Aside from the policy manual, the defendants lean on an affidavit in which a guard testifies that inmates can and do appeal denials of civil rights grievances in various ways "per the guidelines in the Policy Manual" (Dkt. 58-7 at p. 1). The guard's affidavit claims that inmates can appeal by "submit[ting] a duplicate grievance[,] indicat[ing] the desire for an appeal on the grievance response and submit[ting] the response form[, or] fil[ing] a separate grievance, grieving the result of the initial grievance" (Dkt. 58-7 at p. 1). The Court notes that none of these methods is listed in the policy manual.[3] But more fundamentally, there is, again, no evidence in this record that Springer ever even saw the policy manual; and the guard's affidavit does not explain how the information within that

---

[3] The manual simply says:
>   GRIEVANCE REVIEW (APPEAL)
>   A. If the decision made by the Grievance Board is disputed by the inmate, he may appeal to the Sheriff or his designee.
>      1. Upon receipt of the appeal request, the Sheriff or his designee will review the findings and actions taken by the Grievance Board.
>      2. The Sheriff or his designee will notify the inmate(s) in writing of his decision as soon as possible, but not to exceed fifteen (15) days. (Excluding weekends and holidays).
>      3. The Sheriff's or his designee's decision will be final.
>   B. Records will be maintained of all hearings, reviews, and action(s) taken. A copy of inmate notification letters will be placed in the Jail Administration files. No information will be released unless approved by the Sheriff or his designee.
>   Dkt. 58-5 at p. 133.

manual is "known to inmates in the jail[,]" let alone how it was known to Springer (Dkt. 58-7 at p. 1). Springer himself testified that "[he] did not know of any grievance review process" until another inmate told him—incorrectly, judging from the policy manual and the guard's affidavit—that the way to appeal the denial of a grievance was to "ask for a complaint packet from internal affairs" (Dkt. 62-3 at p. 3). When Springer did as the other inmate said, the internal affairs official refused to give him the packet (Dkt. 62-3 at p. 3). No one, according to Springer, ever told Springer that he could pursue any of the appellate avenues listed in the guard's affidavit; and it does not appear that any jail official ever told him that he could even appeal the denial of a grievance. The defendants have not established their entitlement to summary judgment on this ground.

### b. The fact that Springer did not appeal his disciplinary conviction is irrelevant.

The defendants argue that Springer failed to exhaust his administrative remedies because he did not appeal the "findings" entered after a disciplinary proceeding arising out of the incident from which this lawsuit also stems (Dkt. 58 at p. 10). The defendants cite one case, *Richardson v. Spurlock*, 260 F.3d 495 (5th Cir. 2001), to support their assertion that "a prisoner must file a disciplinary appeal if the case involves an allegedly false disciplinary report, as this one does" (Dkt. 58 at p. 9) (quotation marks omitted). The Court disagrees.

The Court finds *Richardson* distinguishable. In *Richardson*, the filing of the allegedly false disciplinary report was itself the basis of the dismissed claim. *Richardson*,

260 F.3d at 498–99. Claims alleging that guards retaliated against inmates by filing false disciplinary reports are fairly common and are viable. *See, e.g., Hart v. Hairston*, 343 F.3d 762, 764–65 (5th Cir. 2003) (holding that an inmate stated a valid Section 1983 claim by alleging that a guard filed a false disciplinary report against him in an attempt to keep the inmate from exposing the guard's intent to conceal information from state inspectors). But Springer is not making such a claim; he is suing the defendants because, according to him, Rekoff and Austin beat him for making a sarcastic remark to Austin. Springer was not required to exhaust his administrative remedies on claims that are not part of his lawsuit. *See Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem *that will later form the basis of the suit*[.]") (emphasis added).

There is a distinction between excessive force allegations and disciplinary convictions that are peripherally related to the alleged excessive force; that distinction animated the analysis employed by the Eastern District of Louisiana in *Esteen v. LeBlanc*, No. 13-5419, 2014 WL 6774079, at *2–4 (E.D. La. Dec. 2, 2014), which examined the same administrative provisions as *Richardson*. In *Esteen*, an inmate properly appealed his disciplinary conviction for "aggravated sex offenses—other prohibited sexual behavior" directed towards a guard, but he did not file any civil rights grievances. *Id*. The inmate then filed a lawsuit raising several claims stemming from the incident for which he received the disciplinary conviction, including one claim alleging excessive force against a guard who detained him. *Id*. The *Esteen* court deemed the

disciplinary appeals irrelevant to the question of whether the inmate had exhausted administrative remedies on the excessive force claim and dismissed the excessive force claim for failure to exhaust. *Id*. The court's reasoning was based on the principle, supported by a cite to *Richardson*, that in the Louisiana prison system "[a] disciplinary appeal is different from [a civil rights grievance] and one cannot be substituted for the other." *Id*. Galveston County's jail policy manual draws a similarly sharp distinction between disciplinary appeals and civil rights grievances, making clear that "[t]he [civil rights] grievance mechanism is not an appeal process for disciplinary actions" (Dkt. 58-5 at p. 131).

The distinction is reinforced by the fact that the Court sees no findings in the disciplinary panel's order having anything to do with excessive force. The disciplinary panel's order is very sparse—so sparse, in fact, that it seems to contravene the policy manual's mandate that the panel provide "a written statement to include the disciplinary action taken, reason for the action taken, and the evidence relied upon" (Dkt. 58-5 at p. 128). The Court can glean from the order that the panel found Springer guilty of unspecified "conduct which disrupt[ed] or interfere[d] with the security or orderly running of the institution" and sentenced him to thirty days in lockdown (Dkt. 58-2 at p. 65). But the panel's order sets out no specific factual findings (it does not even specify exactly what conduct by Springer the panel found "disrupt[ive]"); summarizes Springer's testimony in two sentences ("I never made any movements. He refused to give me a tray of food."); and does not discuss at all the evidence against Springer (which the Court

presumes consisted of the incident reports written by Austin and Rekoff), let alone state which parts of that evidence the panel relied upon (Dkt. 58-2 at p. 65). The order says that the disciplinary hearing lasted five minutes, from 8:20 p.m. to 8:25 p.m. (Dkt. 58-2 at p. 65). There is no transcript, or even a list of witnesses, in the record. A vague finding that Springer behaved in a way that was disruptive, which is the only finding that the panel's order can even arguably be said to contain, does not constitute a finding with regard to the excessiveness of the force used against him by Austin and Rekoff. In other words, for purposes of the excessive force claim, the Court sees no finding in the disciplinary panel's order for Springer to appeal.

In short, the Court is not convinced by the defendants' argument that "[t]his suit must be dismissed in its entirety because of the failure to appeal the disciplinary decision" (Dkt. 58 at p. 10). It is unclear from this summary judgment record how Galveston County's jail policy required Springer to both appeal his disciplinary case and file a grievance alleging excessive force when all he wanted to complain about was excessive force—particularly when *Esteen*'s sound analysis of a similar administrative framework is applied. See *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'"). The County's jail policy manual specifies that disciplinary appeals are appropriate for challenging "sanctions imposed by the Disciplinary Committee[,]" and Springer does not base any claims in this lawsuit on the thirty days he received in lockdown (Dkt. 8-5 at p. 128). *Esteen* stands convincingly for the proposition that

disciplinary appeals are actually an improper administrative avenue for the exhaustion of excessive force claims; it is hard to see how they can be both an improper avenue and, as the defendants argue, a necessary one.

### c. *Springer was not required to include* Monell *claims in his grievance.*

The County contends that the claims against it must be dismissed for failure to exhaust administrative remedies because "Springer never filed any grievance alleging that Galveston County failed to train or supervise its deputies" (Dkt. 58 at p. 9). The County seems to be arguing that Springer was required to include *Monell* claims against the County in his grievance in order to sue the County under *Monell*. The County cites no authority for this argument, and the Court disagrees with it.

Municipalities are considered "persons" who may be sued directly under Section 1983. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). A plaintiff can establish municipal liability by proving three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quotation marks and citation omitted). Liability can be based on either an officially adopted policy or "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of*

*Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Springer is seeking to hold the County liable based on what he alleges is a persistent, widespread practice of "deputies using force well out of proportion to the need, if any is needed at all, on inmates who are restrained (and/or locked in their cells), quickly resorting to punching an inmate in the head and face" (Dkt. 62 at p. 18). In his grievance, Springer complained that Rekoff and Austin punched, kicked, and stomped on him while he was handcuffed and shackled, leaving "multiple knots, cuts and bruises on [his] head and face" (Dkt. 58-4 at p. 33). Springer further alleged that he had "written several grievances concerning this matter and received no response[,]" although the other grievances are not contained in the summary judgment record (Dkt. 58-4 at p. 33).

The County has not cited any case in which a court dismissed a *Monell* claim because that claim was not included in prison grievances complaining of conduct that was later alleged to have been engaged in pursuant to official custom or policy.[4] Dismissing cases on that basis would impose unduly onerous barriers on inmates (and do so in many of the most egregious cases of official misconduct) without furthering the purposes of the PLRA. The PLRA requires prisoners to exhaust administrative remedies because Congress wanted to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534

---

[4] The Court has not found any such case, either. One district court opinion from Idaho dismissed *Monell* claims for failure to exhaust, but the court dismissed the claims because the inmates did not appeal the denial of their grievances. *Castillon v. Corrections Corp. of America, Inc.*, No. 1:12–CV–00559, 2013 WL 2446480 (D. Idaho June 4, 2013). The court did not say whether the grievances specifically included *Monell* claims and did not analyze the argument presented by the County here.

U.S. at 525. To that end, "[the prisoner's] grievances must alert prison officials to a problem and give them an opportunity to address it." *Johnson*, 385 F.3d at 516–23. The grievance need not set out legal theories; it must simply provide "fair notice of the problem that will form the basis of the prisoner's suit." *Id*. (quotation marks omitted). The context-specific fair notice standard determines how much factual detail is required to exhaust a claim. *Id*. For example, a grievance can sufficiently identify an unnamed person if that person's identity and role in the Constitutional deprivation are ascertainable from the information provided in the grievance—the *Johnson* court gave the example of referring to "the guards in the shower room" on a particular date. *Id*. Under the fair notice standard, it seems that an inmate will typically exhaust his administrative remedies on a *Monell* claim simply by exhausting his remedies on his claims regarding the officially sanctioned conduct. If the conduct is indeed officially sanctioned, prison officials will know it from looking at the grievance. The Court is not persuaded that Springer was required to allege *Monell* claims in his grievance in order to pursue those claims against the County.

## II.     The Court's rulings and orders

The defendants have not conclusively established their exhaustion defense, so the Court will sit as factfinder with regard to that defense pursuant to *Dillon*. The Court notes that the language of the Inmate Handbook seems misleading in its implication that there is no appellate step to the civil rights grievance review process. However, the parties will have the opportunity to present additional evidence bearing on whether Springer "had a

fair, reasonable opportunity to apprise himself of the procedures" for appealing denied grievances. *Davis*, 798 F.3d at 295. If necessary, the Court will hold an evidentiary hearing.

Based on the foregoing, the Court **ORDERS** as follows:

1. The agreed motion to allow electronic service (Dkt. 57) is **GRANTED**.

2. Springer's unopposed motion for an extension of time to respond to the County's motion for summary judgment (Dkt. 60) is **GRANTED**.

3. Springer's motion for leave to seek and compel discovery (Dkt. 59) is **DENIED** but will be considered reurged if the Court decides the exhaustion issue in Springer's favor.

4. The defendants' motions for summary judgment (Dkt. 28 and Dkt. 58) are **DENIED**; but the grounds raised, other than the exhaustion-of-remedies defense, will be considered reurged if the Court decides the exhaustion issue in Springer's favor.

5. The defendants are **ORDERED** to submit any additional evidence supporting their exhaustion defense within 30 days of the date of entry of this order.

6. Springer is **ORDERED** to submit any additional evidence opposing the defendants' exhaustion defense within 30 days of the defendants' evidentiary submission.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 26th day of September, 2016.

_____
George C. Hanks Jr.
United States District Judge