United States District Court
Southern District of Texas
**ENTERED**
May 12, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KYLE SPRINGER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-300 |
| | § | |
| UNKNOWN REKOFF, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ORDER

The plaintiff, Kyle Springer (TDCJ #01955605), is an inmate in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). He has filed this action under 42 U.S.C. § 1983, alleging that he was subjected to excessive force while held in the Galveston County Jail ("the Jail"). Springer alleges that two jail guards, Defendants Cory Rekoff and Dante Austin, threw him to the ground and repeatedly kicked and punched him after Springer had a minor verbal disagreement with Austin; Springer was shackled and handcuffed at the time (Dkt. 17 at pp. 3–4). Rekoff and Austin have filed a joint motion for summary judgment (Dkt. 28). The Court previously tabled that motion and informed the defendants that it would be considered reurged if the Court found against the defendants on their affirmative defense that Springer failed to exhaust his administrative remedies (Dkt. 65). The Court has, by separate order, ruled against the defendants on their failure-to-exhaust defense. The motion for summary judgment filed by Rekoff and Austin is now considered reurged and is **DENIED**.

## I. BACKGROUND

According to his affidavit, on February 12, 2014, Springer was eating lunch in a dayroom in a lockdown unit in the Jail; he was seated at a table with handcuffs on his wrists and shackles on his legs (Dkt. 33-1 at pp. 1–2). Austin, who was working in the dayroom, approached Springer and began talking to him about how Springer had hidden a tray of food in his cell a few days before (Dkt. 33-1 at p. 2). Austin accused Springer of stealing that tray, to which Springer retorted that he "had not technically stolen a tray from [Austin]" because "taxpayers pay for jail property" (Dkt. 33-1 at p. 2). In response to Springer's snide remark, Austin "ripped the tray" on which Springer was eating out of his hands, and Springer's "food went everywhere" (Dkt. 33-1 at p. 2). Springer stood up and asked to talk to Austin's supervisor (Dkt. 33-1 at p. 2).

Austin walked away without responding; and Springer, who "knew [he] was not going to get any food, . . . grabbed a sandwich and tried to eat as quickly as possible" (Dkt. 33-1 at p. 2). Austin walked back over and grabbed that sandwich out of Springer's hands, as well; and, "[a]t the same time, [Springer] got slammed to the floor by Rekoff" (Dkt. 33-1 at p. 2). Austin and Rekoff then grabbed Springer, "slung him around[,]" dragged him across the floor over to his cell, and "slung [him] into [his] cell where [his] head hit the wall and the toilet" (Dkt. 33-1 at p. 2). Austin and Rekoff "flipped [Springer] over, and Austin was crouched over [him], punching [him,] while Rekoff kicked [Springer] and stomped [his] shackled feet" (Dkt. 33-1 at p. 2). Springer's affidavit states that, "[f]rom the moment [he] hit the ground in the dayroom until the deputies stopped

beating [him] in [his] cell, [he] was handcuffed and shackled on the ground" and "[t]he only movements [he] made after being slammed to the ground were involuntary movements and attempts to cover and protect [his] head" (Dkt. 33-1 at p. 3).

A fellow inmate, Charles Nallie, has submitted an affidavit in which he testifies that Springer made a sarcastic remark to Austin, after which Austin grabbed the tray, Springer stood up, and Rekoff "grabbed [Springer] by the neck from behind and slung him over his hip and threw him to the ground" (Dkt. 33-2).[1] Nallie's affidavit further states that, although Springer was "subdued" after Rekoff took him down, "Austin straddled [Springer's] body and started punching him" while "Rekoff had him pinned" (Dkt. 33-2).[2] The deputies dragged Springer into his cell, from which Nallie heard Springer being kicked and punched and Springer's head hitting the wall (Dkt. 33-2).[3]

---

[1] Two other inmates submitted unsworn declarations supporting Springer's claims (Dkt. 7 and Dkt. 8). However, the defendants have objected to those declarations as being facially invalid (Dkt. 39 at p. 9). The declarations are signed and indicate that the facts within them are true and correct, but they do not say that they were signed under penalty of perjury. *See* 28 U.S.C. § 1746. The Court will sustain the objection.

[2] This is an example of how accounts of the incident differ in some respects, even among witnesses who are nominally on the same side. Springer's affidavit, though it says that he was "slung around," does not mention his being pinned and punched in the dayroom before being dragged into his cell. On the other side, Austin and Rekoff gave use-of-force reports that differ with regard to where Rekoff kneed Springer in the abdomen. Austin's report says that the knee strikes occurred in Springer's cell; Rekoff's report says that they occurred in the dayroom (Dkt. 58-2 at pp. 1–2).

[3] The defendants object to Nallie's testimony that Springer's head hit the wall of his cell and that Austin and Rekoff kicked and punched Springer in his cell on the basis that Nallie's testimony is "a guess based on what [Nallie] heard going on in a neighboring cell but did not see" (Dkt. 39 at p. 9). The Court construes this as an objection under Federal Rule of Evidence 602 that Nallie has not established personal knowledge of what happened in Springer's cell. The Court will sustain the objection as far as it challenges Nallie's conclusions about who struck whom and about Springer's head hitting the wall. However, the Court overrules the objection to the extent that it challenges Nallie's ability to testify to hearing the sounds of kicks and punches coming from Springer's cell, which essentially negates any ground the defendants gained through their objection. There is other evidence that the deputies struck Springer in his cell—even Austin's

Just after the incident, a nurse in the infirmary noted that Springer presented with knots on the right side of his forehead and the left side of his face; lacerations on both wrists; and abrasions on his left ankle, left back, left side, and abdomen (Dkt. 29 at p. 40). Jail personnel took pictures documenting these injuries (Dkt. 31 at pp. 257–68; Dkt. 32 at pp. 1–8).

Jail officials investigated the use of force by Austin and Rekoff because Austin and Rekoff did not properly report the use of force to their supervisor and the maneuvers described by Austin and Rekoff in their reports were inconsistent with the injuries sustained by Springer (Dkt. 58-2 at p. 8). In their reports, Austin and Rekoff claim that Rekoff used "knee strikes" to Springer's abdomen and Austin used "strikes to the Brachial Plexus nerves in Springer's neck" because Springer, though on the ground, "attempted to get up[;]" "attempt[ed] to lunge at" the deputies' legs; and "clutch[ed]" Austin's leg (Dkt. 58-2 at pp. 1–7). The investigating officer initially classified the use of force as "unjustified," noting that "[t]he tactics and the type of force that has [sic] been reported could have been avoided by trying to use pressure points or pain compliance before knee or open handed strikes" Dkt. 58-2 at p. 8). He changed that classification to "justified" after speaking with two inmates who said they saw Springer hitting his head on his cell wall in an apparent effort to fake injuries (Dkt. 58-2 at pp. 8–9). Springer, as

---

own report states that, in Springer's cell, Austin struck Springer twice in the neck and Rekoff kneed Springer twice in the abdomen (Dkt. 58-2 at p. 6)—and no evidence anywhere in the record that Springer ever struck either deputy, in his cell or elsewhere. The defendants' objection is also, of course, overruled to the extent that it challenges Nallie's ability to testify to what he actually saw in the dayroom—the verbal exchange between Springer and Austin; the takedown by Rekoff; Austin punching Springer while Rekoff pinned Springer; and the defendants dragging Springer to his cell (Dkt. 33-2).

one would guess, denies that his head injuries were self-inflicted (Dkt. 33-1 at pp. 1, 3). The investigating officer further concluded that Austin and Rekoff did not intentionally flout use-of-force reporting regulations (Dkt. 58-2 at p. 9).

## II. <u>SUMMARY JUDGMENTS AND QUALIFIED IMMUNITY</u>

### A. Rule 56

Austin and Rekoff have filed a motion for summary judgment. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the

Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## B. Qualified Immunity

The defendants' motion invokes qualified immunity (Dkt. 28 at p. 10). In civil rights actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden shifts to the non-movant to rebut it. *Id.* All inferences are drawn in the non-movant's favor. *Id.*

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37. The first prong of the qualified immunity analysis is governed by current law, while the second prong is governed by the law as it was clearly established at the time of conduct in question. *Petta*

*v. Rivera*, 143 F.3d 895, 899–900 (5th Cir. 1998). The legal standards can, and sometimes will, conflict; but both prongs must be satisfied. *Id.*

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at 253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III.  **EXCESSIVE FORCE**

Springer, who was a pretrial detainee at the time of the incident giving rise to this lawsuit, seeks relief under 42 U.S.C. § 1983 for what he alleges was the use of excessive force by Austin and Rekoff. Pretrial detainees derive protection from excessive force from the Fourteenth Amendment instead of the Eighth Amendment. In 2014, when this

incident took place, the distinction was not material. *See, e.g., Edwards v. Loggins*, 476 Fed. App'x 325, 327–28 (5th Cir. 2012). When a court evaluated an excessive force claim brought by a pretrial detainee in 2014, the core inquiry was "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993) (quotation marks omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). However, in 2015 the Supreme Court issued its *Kingsley* opinion, which expressly disavowed the subjective state-of-mind component and established that "a pretrial detainee must show only that the force purposely or knowingly used against him was *objectively* unreasonable." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473–75 (2015) (emphasis added). Thus, this case is one of the "schizophrenic" (the Fifth Circuit's word) cases in which the different prongs of the qualified-immunity analysis are governed by different legal standards. *See, e.g., Rankin v. Klevenhagen*, 5 F.3d 103, 109 & n. 7 (5th Cir. 1993) (remanding so that the district court could apply an abrogated "severe injury" requirement to the "objective reasonableness" inquiry but noting that the district court acted properly by applying current law to the "Constitutional violation" inquiry). Because the second prong is governed by what the Court views as a more demanding legal standard, the Court will analyze the prongs in reverse order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (giving district judges discretion to decide which prong of the qualified immunity analysis to address first).

### a. There is sufficient evidence to establish that the deputies engaged in conduct that both violated Springer's Constitutional rights and was objectively unreasonable in light of law that was clearly established in 2014.

As previously stated, when a court evaluated an excessive-force claim brought by a pretrial detainee in 2014, the core inquiry was "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia*, 981 F.2d at 1446. The intent of the official using force was determined by reference to five factors outlined in the Supreme Court's *Hudson* opinion: (1) the extent of injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016). More than a *de minimis* amount of force was required, "provided that the use of force [wa]s not of a sort repugnant to the conscience of mankind." *Id.* at 453 (quotation marks omitted). A plaintiff did not need to show significant injury, although the extent of the injury could supply insight as to the amount of force applied. *Id.*

Springer has presented sufficient competent summary judgment evidence to rebut this prong of the deputies' qualified immunity defense. It was beyond dispute in 2014 that the use of force against a subdued, restrained, non-threatening, non-resisting inmate amounted to a Constitutional violation. *Cowart*, 837 F.3d at 454–55 & nn. 28 & 32 ("We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not use gratuitous force

against a prisoner who has already been subdued or incapacitated.") (quotation marks, brackets, and ellipsis removed). If Springer's competent evidence is credited, as it must be at this stage, Austin and Rekoff needlessly used significant force—they punched him, kicked him, stomped on him, and threw him against the toilet and wall in his cell—when Springer was subdued, restrained, and non-resisting and could not reasonably have been perceived as threatening. No reasonable correctional officer could have thought such conduct proper in 2014. *Id.*

The defendants characterize Springer's injuries as too insignificant to support an excessive-force finding (Dkt. 28 at p. 12). The Court disagrees. Springer suffered knots on the right side of his forehead and the left side of his face; lacerations on both wrists; and abrasions on his left ankle, left back, left side, and abdomen. Despite the defendants' characterization of Springer's injuries as "very minor" (Dkt. 39 at p. 8), the injuries are indicative of force that was more than *de minimis*. *See Brown v. Lippard*, 472 F.3d 384, 386–87 (5th Cir. 2006) (nurse noted "one-centimeter abrasions on both [the inmate's] left knee and left shoulder, pain in [the inmate's] right knee, and tenderness around [the inmate's] left thumb" after correctional officer struck handcuffed inmate several times on his back, head, and shoulders and tried to "ratchet" inmate's arms over his head); *Gomez v. Chandler*, 163 F.3d 921, 924–25 (5th Cir. 1999) (inmate suffered "cuts, scrapes, [and] contusions to the face, head, and body" after officers knocked him down and punched and kicked him). "Regardless, the jury [i]s entitled to find an excessive force violation based on other *Hudson* factors, namely, the use of force despite the lack of a perceived threat or need for force." *Cowart*, 837 F.3d at 454–55 & nn. 28 & 32; *see also Wilkins v.*

*Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Indeed, in *Brown* the Fifth Circuit went so far as to say that, in any event, "beating a man on the ground who is handcuffed very well might satisfy a 'repugnant to the conscience test,'" though the plaintiff's proof of more-than-*de-minimis* force in that case ultimately made it unnecessary to address the issue. *Brown*, 472 F.3d at 386 n. 1.

The defendants also insist that the force used was justified "because of Springer's admitted refusal to return to his cell" along with Springer's mouthing off to Austin, resisting the taking of his food tray, standing up, asking to speak to Austin's supervisor, and attempting to eat a sandwich after Austin yanked away his food tray (Dkt. 28 at pp. 13–14). In support, the defendants cite *Dawson v. Anderson County, Tex.*, 566 Fed. App'x 369 (5th Cir. 2014), *rehearing and en banc rehearing denied*, 769 F.3d 326 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 1453 (2015), in which the plaintiff (according to her summary judgment evidence) refused a second command to "squat and cough" during a strip search, having just complied with the first, and as a result was shot twice with a pepperball gun. A divided Fifth Circuit panel held that the defendants were entitled to qualified immunity because "[m]easured force used on an arrestee who refuses immediately successive search orders cannot be deemed objectively unreasonable under our qualified immunity caselaw." *Id.* at 370–71. The Court is not persuaded by the citation to *Dawson*. First, although petitions for en banc rehearing and a writ of certiorari were both denied in that case, *Dawson* is not precedential. It is a short unpublished

opinion that drew a vehement dissent, and five members of the Fifth Circuit voted to rehear it en banc. More importantly, even on its own terms *Dawson* cannot bear the weight that the defendants place on it. The Court is mindful and appreciative that the law enforcement officers working in prisons and jails do a dangerous, often thankless job; but *Dawson* goes no further than establishing that they can use "objectively reasonable force to obtain compliance" from recalcitrant prisoners. *Id.*; *see, e.g., Harris v. Hardeman County*, No. 13–1100, 2015 WL 3648956, at *8 (W.D. Tenn. June 10, 2015) (citing *Dawson* and holding that a correctional officer was entitled to qualified immunity when he shoved an inmate with a "history of aggression" back into her chair during an administrative hearing after she disobeyed his order to stay seated). It does not give jail officials the power to utilize whatever force they want with no regard for proportionality, and it certainly does not allow them to continue "obtaining compliance" from a subdued, non-resisting inmate by punching him, kicking him, and stomping on him. Crediting Springer's evidence, the force that Austin and Rekoff used far exceeded the measure of force that could be considered objectively reasonable under the circumstances. Notably, even the officer who investigated the deputies' use of force initially concluded that the force used was excessive, despite Springer's "non compliance[,]" because Springer's injuries indicated that Austin and Rekoff had struck Springer in the head (Dkt. 58-2 at p. 8). The investigator later changed his classification to "justified" because he concluded, based on statements from two inmates, that Springer's head injuries were actually self-inflicted (Dkt. 58-2 at p. 8). Assuming that those inmates testify, the jury will not be obligated to credit their statements just because the investigator did, and the Court gets

the impression that even the investigator would concede that strikes to the head were unjustified in this situation.

At any rate, *Cowart*, a more recent and precedential case, is a far better guide for the Court's analysis than *Dawson*. In *Cowart*, an inmate was ordered to get on his knees, place his hands behind his head, and touch his elbows to the wall during a shakedown of his cell. *Cowart*, 837 F.3d at 449. He became uncomfortable and asked for permission to stand, which was denied. *Id.* He stood anyway. *Id.* Two officers forced him back to his knees, and he "mouthed off" to them. *Id.* (quotation marks omitted). A third officer then punched the prisoner twice in the face, after which she and several other officers took him down from his kneeling position to the ground, handcuffed him, kicked him, punched him, stomped on him, and sprayed him with Mace. *Id.* A jury found that third officer (the one who first punched the plaintiff in the face) liable under Section 1983 for excessive force, and the Fifth Circuit affirmed the judgment against her. The Fifth Circuit held that "evidence that [the inmate] was restrained and non-threatening when [the officer] punched him" and then joined the beating that immediately followed the punches would "support[] a finding of excessive force"—and that the verdict against the officer would stand "[r]egardless" of whether the inmate could directly establish "a causal connection between her conduct and [the inmate's] injuries[.]" *Id.* at 454–55. Similarly, Springer, even assuming that he disobeyed an order, has presented evidence showing that he was beaten by Austin and Rekoff despite being restrained (it is undisputed that he was on the ground and wearing handcuffs and shackles) and non-threatening.

**b. There is sufficient evidence to support the conclusion that the deputies engaged in conduct that violated Springer's Constitutional rights as those rights are defined in light of current law.**

In 2015, the focus in excessive-force cases brought by pretrial detainees shifted from the defendant's "intent to punish" to whether "the force purposely or knowingly used against [the detainee] was objectively unreasonable." *Kingsley*, 135 S.Ct. at 2473. The guiding factors, which are similar to those outlined in *Hudson*, are: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* The list of factors is not exclusive, and "objective reasonableness turns on the facts and circumstances of each particular case." *Id.* (quotation marks omitted).

The Court again turns to *Cowart*. Even though *Cowart* examined the plaintiff's excessive-force claims under the pre-*Kingsley* test, the pre-*Kingsley* test is actually more demanding than the one announced in *Kingsley*. As discussed above, the pre-*Kingsley* test required a showing that the defendant acted "maliciously and sadistically for the very purpose of causing harm" and did not act "in a good faith effort to maintain or restore discipline[.]" *Valencia*, 981 F.2d at 1446. In *Cowart*, evidence that a correctional officer punched a subdued, restrained, non-threatening, non-resisting inmate sufficed to make that showing, as did evidence that the officer helped a group of other officers beat the subdued inmate immediately thereafter. *Cowart*, 837 F.3d at 454–55 & nn. 28 & 32. If the evidence supports a finding that the officer was acting not out of a good-faith effort to

maintain or restore discipline but maliciously and sadistically for the very purpose of causing harm, it is hard to see how one could credibly contend that the same evidence would not also support a finding that the officer's actions under the circumstances were objectively unreasonable. Springer has presented evidence showing that he was beaten by Austin and Rekoff despite being restrained (it is undisputed that he was on the ground and wearing handcuffs and shackles) and non-threatening. That evidence is sufficient to rebut the deputies' defense of qualified immunity. *See Cowart*, 837 F.3d at 454–55 & nn. 28 & 32.

### c. The Court's conclusions apply to both deputies.

The Court is mindful that Fifth Circuit precedent requires a separate consideration of the deputies' individual actions. *Meadours v. Ermel*, 483 F.3d 417, 421–22 & n. 3 (5th Cir. 2007). The Fifth Circuit has emphasized, however, that where separate defendants' actions are materially indistinguishable, "[s]eparate consideration does not require courts to conduct a separate *analysis* for each officer[.]" *Id.* (emphasis added). In the Court's view, this is one of those cases, which is why the Court has spent this opinion discussing Austin and Rekoff collectively. Tellingly, Austin and Rekoff filed a joint motion for summary judgment and have made exactly the same arguments on the issue of qualified immunity (Dkt. 28 at pp. 10–17; Dkt. 39 at pp. 7–11). That said, the Court has considered the deputies' actions separately as follows:

It is undisputed that Springer was wearing handcuffs and leg shackles at the time of the events giving rise to this lawsuit. Springer has rebutted Austin's qualified immunity by presenting evidence that would support a finding that Austin engaged in the

following actions when Springer was restrained, subdued, non-threatening, and non-resisting: punching Springer while he was on the ground, in both the dayroom and in Springer's cell; slinging Springer around in the dayroom; dragging Springer across the floor in the dayroom; and throwing Springer into his cell so that Springer's head hit the wall and the toilet. Additionally, Austin has admitted in his own report that he struck Springer in the neck in Springer's cell. Springer has rebutted Rekoff's qualified immunity by presenting evidence that would support a finding that Rekoff engaged in the following actions when Springer was restrained, subdued, non-threatening, and non-resisting: executing a "hard takedown" maneuver in the dayroom; pinning Springer down while Austin punched Springer in the dayroom; slinging Springer around in the dayroom; dragging Springer across the floor in the dayroom; throwing Springer into his cell so that Springer's head hit the wall and the toilet; kicking Springer in Springer's cell; and stomping on Springer in Springer's cell. Additionally, Rekoff has admitted in his own report that he kneed Springer in the abdomen in the dayroom, and Austin stated in his report that Rekoff kneed Springer in the abdomen in Springer's cell.

Austin and Rekoff are not entitled to qualified immunity, and their motion for summary judgment on that basis is denied.

## IV. **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 28) is **DENIED**.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on _May 12_, 2017.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE